IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDSEY MELNYK,

        Plaintiff,

vs.                                                                                     No. CIV 04-333 LCS

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand Agency Decision (Doc. 6), filed July 30, 2004. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that Plaintiff's Motion is well-taken and should be **GRANTED**.

    **I.**    **STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is unable to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.     PROCEDURAL HISTORY

Plaintiff, now 21 years old, filed her application for supplemental security income on January 23, 2002, alleging disability commencing on January 1, 2002. (R. at 44). Plaintiff's application did not state the basis of her alleged disability. (Id.) Plaintiff received her GED in August, 2001 (R. at 47-L) and has past relevant work as a waitress and as a salesperson. (R. at 47-G).

Plaintiff's application for supplemental security income was denied at the initial level on June 11, 2002 (R. at 24-27) and at the reconsideration level on September 11, 2002. (R. at 30-33). Plaintiff appealed the denial of her application by filing a Request for Hearing by Administrative Law Judge. (R. at 34). Attorney E.C. Gomez represented Plaintiff at the hearing before the ALJ. (R. at 195). Plaintiff, Plaintiff's mother, and vocational expert Bertina Telles testified at the hearing. (Id.)

The ALJ issued his decision on October 27, 2003 (R. at 8-10), analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in 2002. (R. at 12). At step two, the ALJ found that Plaintiff had an impairment or combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b). (R. at 13). The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.) The ALJ also found that Plaintiff was not fully credible regarding the extent of her limitations. (Id.) At step four, the ALJ found that Plaintiff had a Residual Functional Capacity ("RFC") for unskilled, light work. (R. at 14). After considering the opinion of the vocational expert, the ALJ found that Plaintiff could not perform any of her past relevant work, (R. at 15) but that she was capable of adjusting to other work existing in significant numbers in the national economy. (Id.) Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (R. at 16).

Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council and the

Appeals Council denied this request for review on January 21, 2004. (R. at 4-6). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On March 24, 2004, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.    ANALYSIS AND FINDINGS

Plaintiff has a history of migraine headaches and psychological complaints. The first record of migraine headaches in this record dates to February of 2000. (R. at 113). Plaintiff at that time received a medical recommendation for homebound educational services for the remainder of the 1999-2000 academic year. (Id.) The reason for this recommendation was listed as "daily and continuous migraine headaches", which "reduced memory and ability to concentrate." (Id.)

Plaintiff visited Dr. Richard Pinon in September and November of 2001 for further evaluation of headaches. (R. at 52-53). She was noted to have a long history of atypical migraine headaches and tension headaches, primarily in the occipital region. (Id.) At this time she was tried on Skelaxin[1], Darvocet[2], Percocet[3], and anti-inflammatory medications. (Id.) Plaintiff was also noted to be taking Prozac for depression. (Id.)

Ms. Melnyk was seen at Eastern New Mexico Medical Center several times between

---

[1] Skelaxin is indicated for the relief of discomfort associated with acute, painful musculoskeletal conditions. The mode of action of this drug may be related to its sedative properties. *Physician's Desk Reference*, 909, (54th ed. 2000).

[2] Darvocet is indicated for relief of mild to moderate pain. The most common side effects include dizziness, sedation, nausea and vomiting. *PDR* at 1574-1575.

[3] Percocet is indicated for the relief of moderate to moderately severe pain. The most frequent adverse reactions include lightheadedness, dizziness, sedation, nausea and vomiting. *PDR* at 1037.

December of 2001 and February of 2002 for recurrent headaches lasting several days. (R. at 56-76). Records from this period indicate that Plaintiff was complaining of migraine with photophobia and visual disturbances and was taking Excedrin PM and Vicodin[4] for pain relief. Plaintiff continued to be followed by Drs. Pinon and Vega for headaches during this time. (R. at 48-49).

Dr. Vega's notes from early 2001 indicate Ms. Melnyk had recently visited the ER for headaches with accompanying nausea had received Demerol[5] and Phenergan[6] injections. (R. at 49). Plaintiff reported that these treatments did not help. (Id.) Dr. Vega also reported that Plaintiff had been accused by the ER staff of being a "narcotic seeker." (Id.) Dr. Pinon evaluated Plaintiff and found elevated blood pressures. (R. at 48). She was referred to a neurologist and given Vicodin and Inderal[7] to help with headaches. (Id.) Plaintiff's mother reported that Plaintiff stayed home during the day and had limited activity secondary to her headaches. (Id.)

In April and May of 2002, Plaintiff underwent several psychological assessments. (R. at 77-85, 89-102). An evaluation by Disability Determination Services of New Mexico found Plaintiff to have marked limitations in the ability to carry out instructions, to attend and concentrate, and to work without supervision. (R. at 81). She was found to have moderate

---

[4] Vicodin is indicated for the relief of moderate to moderately severe pain. Adverse reactions may include lightheadedness, dizziness, sedation, nausea and vomiting. *PDR* at 1502.

[5] Demerol is indicated for the relief of moderate to severe pain. Adverse reactions include lightheadedness, dizziness, sedation, nausea and vomiting. May cause respiratory depression and, to a lesser degree, circulatory depression. *PDR* at 2740.

[6] Phenergan is indicated as an adjunct to analgesics for the prevention and control of nausea and vomiting. *PDR* at 3290.

[7] Inderal is indicated for the prophylaxis of common migraine headache. *PDR* at 3249.

limitations in the ability to interact with the public and with coworkers and supervisors. (R. at 82). The limitations found were all due to Plaintiff's migraine headaches. (Id.) Psychologist Dr. Will Parsons diagnosed Plaintiff with Adjustment Disorder with Mild Depression, associated with migraines, problems with adaptive functioning due to migraine headaches, and rated Plaintiff's GAF score at 50[8]. (R. at 80). Further evaluation in September, 2002 revealed affective disorder, disturbance of mood accompanied by a medically determinable impairment, and mild difficulties in maintaining social functioning and concentration. (R. at 89-99).

In November of 2002, Dr. Pinon outlined his treatment of Ms. Melnyk, noting her continuing difficulty with activities of daily living and detailing a number of unsuccessful treatments undergone by Plaintiff to alleviate her headaches. (R. at 103). Dr. Pinon also noted that Ms. Melnyk required narcotic medications on an outpatient basis and that her headaches had required hospital treatment on at least four occasions. (R. at 104).

Plaintiff was again seen in the ER of Eastern New Mexico Medical Center in November and December of 2002 and May of 2003, complaining of migraines with photophobia. (R. at 131-136, 140- 149). Plaintiff noted these incidents to be similar in quality to previous headaches and was again treated with Demerol and Phenergan. (Id.)

**IV.   DISCUSSION**

Plaintiff raises several allegations of error in her Motion to Reverse and Remand Administrative Agency Decision. (Doc. 6). She contends that the ALJ erred in: 1) evaluating her

---

[8]Global Assessment of Functioning (GAF) is used for reporting the clinician's judgment of the individual's overall level of functioning. The GAF scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure. A GAF score of 50 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manuarl of Mental Disorders*, 34 (4th ed. 2000) [DSM-IV].

mental and physical impairments; 2) evaluating her residual functional capacity; 3) assessing her credibility; and 4) posing defective hypothetical questions to the vocational expert.

Plaintiff first contends the ALJ erred in evaluating the reports of her treating physicians, specifically the reports of Dr. Pinon, by failing to take substantial portions of these reports into account in rendering his decision. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) consistent with other substantial evidence in the record. *Id.* If the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors set forth in 20 C.F.R. § 416.927. *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004). Those factors are: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.*

After considering these factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion. 20 C.F.R.

§ 404.1527(d)(2). These reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave the treating source's medical opinion and the reason for that weight. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. *Watkins*, 350 F.3d at 1301.

In the present case, it is unclear what weight the ALJ gave to the opinions of Dr. Pinon. The ALJ considered Dr. Pinon's records indicating that none of the medical regimens tried on Ms. Melnyk had been successful, that Claimant continued to have headaches on a daily basis, and that even physical therapy had been unsuccessful. (Tr. at 13). The ALJ then briefly discussed Plaintiff's Emergency Room treatment before concluding that Plaintiff retained a residual functional capacity for unskilled, light work. (Tr. at 14). I am unable to discern from the ALJ's opinion what weight he gave to Plaintiff's treating physician's opinion, or if that opinion was rejected completely. Because the Tenth Circuit requires that the ALJ explain the weight given to a treating physician's opinion, I find this case should be remanded for further analysis consistent with this opinion.

Plaintiff also argues that the ALJ erred in finding her allegations of pain were not supported by the record as a whole and therefore, were not fully credible. "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Branum*, 385 F.3d at 1273 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)). Before the ALJ need consider subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. *Id.*

In evaluating claimant's evidence of disabling pain, the ALJ must consider: 1) whether claimant has established a pain-producing impairment by objective medical evidence; 2) if so, whether a 'loose nexus' exists between the impairment and the claimant's subjective allegations of pain; and 3) whether considering all the evidence, claimant's pain is in fact disabling. *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). To determine the credibility of pain testimony, the ALJ should consider factors such as levels of medication and their effectiveness, the extensiveness of attempts to obtain relief, the frequency of medical contacts, the nature of daily activities . . . and the consistency of nonmedical testimony with objective medical evidence. *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).

The ALJ relies on Plaintiff's alleged "normal" daily activities and on Plaintiff's own report that an emergency room physician had once questioned her about drug addiction due to the frequency of her ER visits. (R. at 14). It does not appear from the record that the ALJ considered the medications used by Plaintiff, Plaintiff's inability to attend high school or various other steps taken by Plaintiff, including breast reduction surgery and physical therapy, to alleviate her symptoms. Although the Tenth Circuit generally treats credibility determinations as binding upon review, such determinations will not be upheld if not supported by substantial evidence. *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990). In the present case, it is not clear that the ALJ took all the factors in the record into account in reaching his credibility determination and therefore, his credibility determination cannot be upheld.

Plaintiff further alleges that the ALJ erred in determining she retained the residual functional capacity to perform unskilled, light work. I find that the ALJ's analysis of Plaintiff's RFC was not proper because it is not clear that he considered all the evidence relevant to a

9

determination of RFC. It is well-established in the Tenth Circuit that the ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). However, the record must demonstrate that the ALJ considered all of the evidence. *Id.* Further, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely on as well as significantly probative evidence he rejects. *Id.*

In this case, it is not clear how the ALJ arrived at a decision regarding Plaintiff's residual functional capacity. The ALJ discussed Dr. Pinon's opinion that Plaintiff continued to have headaches on a daily basis and that treatments had been largely unsuccessful (R. at 13) and Dr. Parsons's opinion that Plaintiff's ability to interact with others was significantly impaired during a headache and that the headaches appeared to be "the dominant force in her [the claimant's] life" (R. at 13-14). The ALJ then made his determination that Plaintiff retained the RFC for light, unskilled work, without explaining how he reconciled this conclusion with other evidence in the record. Because it is unclear how the ALJ reached his conclusion, the case must be remanded for further proceedings. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings with specific evidence . . . A bare conclusion is beyond meaningful judicial review.")

Finally, Plaintiff argues that the ALJ erred at step five by posing "incomplete" and "defective" hypothetical questions to the vocational expert. Because I have already determined that the case must be remanded for further analysis at step four, I need not reach the merits of Plaintiff's claim that the ALJ erred in his analysis at step five.

## V.     CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand Administrative Agency Decision, this Court has determined that this case must be remanded for a more thorough explanation of the weight given to the treating physicians' opinions and for further assessment of Plaintiff's residual functional capacity.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **GRANTED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**